UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Stanley McWhite, ) | Civil Action No.: 4:07-cv-01551-RBH |
| ) | |
| Plaintiff, ) | |
| vs. ) | |
| ) | **O R D E R** |
| ACE American Insurance Company, ) | |
| ) | |
| Defendant. ) | |

This is an action in which plaintiff Stanley McWhite seeks a declaratory judgment that he was an insured for purposes of underinsured motorist (UIM) coverage under a policy issued by the defendant to his employer, Ahold Americas Holdings, Inc., d/b/a U.S. Foodservice. In its Answer, Defendant requests a declaratory judgment that the plaintiff was not an insured with regard to any underinsured motorist coverage in the policy.

The undisputed facts show that Plaintiff received bodily injuries on February 10, 2005 when he was struck by a vehicle while he was putting out warning triangles, as required by company policy and Department of Transportation regulations, behind[1] the tractor-trailer truck which he had been driving that had jack-knifed. The highway patrolman who investigated the accident testified that Plaintiff came to rest no closer than one or two car lengths from the back of the trailer after he was hit.

The parties initially agreed to trifurcate the issues in the case, and had filed cross motions for

---

[1] Plaintiff was deposed twice. In July of 2007, he stated that the first triangle was about 50 *meters* behind the trailer and that the second one was 100 *meters* behind the trailer. On November 8, 2007, he stated that the first triangle was 50 *feet* from the trailer and that the second triangle was about 100 *feet* from the trailer.

1

summary judgment on the issue of whether the plaintiff was an insured for purposes of UIM coverage. This Court issued an order on October 1, 2008 denying the motions without prejudice and directing the parties to engage in discovery concerning whether the policy even contained an underinsured endorsement and, if not, whether there was a meaningful offer of underinsured coverage. The parties have now filed cross motions for summary judgment (Docket Entry Numbers 71 and 72) after engaging in discovery on the issues as directed.[2]

In its motion for summary judgment presently before the Court, Defendant ACE American Insurance Company (hereinafter "ACE") contends that it made a meaningful offer of UIM coverage to its insured Ahold (Plaintiff's employer) and that Ahold rejected the offer. Defendant asserts that Ahold utilized a broker, McGriff, in connection with negotiating the terms of the policy and that McGriff sent an offer form to Ahold which was signed by Nicolas Parillo, Ahold's Vice President for risk management, declining the coverage.[3]

Defendant also contends that, if the Court finds the policy contained UIM coverage in some amount, then the policy should be reformed by adding the company's normal UIM endorsement and that, under that endorsement, the plaintiff was not an insured since he did not "occupy" the vehicle at the time he was hit while putting out cones on the side of the highway. Finally, Defendant contends in the alternative that, if the court finds there was $40,000 in UIM coverage (and that the insured declined coverage over $40,000), then the policy should be reformed on the basis of mutual mistake to exclude any UIM coverage.

---

[2] Under Local Rule 7.08, "hearings on motions may be ordered by the Court in its discretion. Unless so ordered, motions may be determined without a hearing."

[3] This is a "fronting policy" in which the coverage is $5,000,000 and the deductible is also $5,000,000.

2

Plaintiff McWhite contends that the policy at a minimum contained UIM coverage of $40,000 but that it failed to include a definition of "insured" such that the statutory definition applies and that the plaintiff was a permissive user. Plaintiff also contends that the company failed to make a meaningful offer of the coverage up to the amount of the liability limits of $5,000,000 and that the policy should be reformed to include $5,000,000 in UIM coverage, using the statutory definition of insured.

### *Summary Judgment Standard*

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Once the moving party makes the showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Fed. R. Civ. P. 56(e).

When no genuine issue of any material fact exists, summary judgment is appropriate. *Shealy v. Winston*, 929 F.2d 1009, 1011 (4th Cir. 1991). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. *Id*. However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Id*., quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

### *Issues*

**1. Does the policy as issued include UIM coverage?**

The first question before the Court is whether the policy terms include an underinsured

3

coverage endorsement.

As noted above, the accident in this case occurred on February 10, 2005. The declaration page and endorsements for the policy were attached to the parties' filings in reference to the motions for summary judgment. By way of background, the declaration page of the policy in effect from 5/19/2004 through 12/1/2004[4] provided under "Coverages", "Underinsured Motorists", the following: "See Endt. 6." It also provides under "Limit" the following: "$ Financial Responsibility *". At the bottom of the page, it states " * where rejection not permitted". Under "Premium" it states: "Included." Endorsement 6[5] is the "Limit of Liability-Uninsured Motorists" and states: "Item 2 of the Declarations is amended to show the following Limit of Insurance for Uninsured Motorists and Underinsured Motorists (when not included in Uninsured Motorists Coverage): $40,000 Connecticut, Illinois, Massachusetts, South Carolina".

A Renewal Endorsement (#159)[6] was issued for 12/1/2004 through 12/1/2005 which refers to Endorsement #163[7] regarding Underinsured Motorists coverage. Endorsement 163 also lists $40,000 in UIM coverage for South Carolina.

Defendant argues that the declaration page makes clear that underinsured motorist coverage was not included unless "rejection (of UIM) (was) not permitted". Since UIM can be rejected in South Carolina, Defendant asserts that the policy did not include such coverage. Plaintiff, however, points to the fact that the declarations refer to Endorsement 6, which lists $40,000 in UIM for South Carolina.

---

[4] Docket Entry #71-4.

[5] Docket Entry # 72-7

[6] Docket Entry #72-7

[7] Docket Entry #72-7

4

Plaintiff also points to the renewal endorsement (#159) which references Endorsement 163, which also lists $40,000 in UIM.

In order to have a valid and enforceable contract there must be a meeting of the minds regarding all essential and material terms. *Player v. Chandler*, 299 S.C. 101, 382 S.E.2d 891 (1989). "As with contracts generally, the cardinal principle in construing insurance contracts is that the intention of the parties controls." *Poston v. National Fidelity Ins. Co.*, 303 S.C. 182, 185, 399 S.E.2d 770 (1990). If the insurance policy incorrectly or imperfectly expresses the agreement of the parties, the policy can be reformed. *Fender v. New York Life Ins. Co.*, 158 S.C. 331, 155 S.E. 577 (1930).

Insurance contracts are construed against the drafter, and in favor of coverage for the insured. *General Acc. Ins. Co. v. Safeco Ins. Companies*, 314 S.C. 63, 443 S.E. 2d 813 (Ct. App. 1994). The Court accordingly finds that the policy was ambiguous with reference to whether it contained underinsured coverage. "A contract is ambiguous when the terms of the contract are inconsistent on their face, or are reasonably susceptible of more than one interpretation." *Ward v. West Oil Co., Inc.*, 379 S.C. 225, 665 S.E.2d 618 (Ct. App. 2008). Where an insurance policy is ambiguous, then extrinsic evidence is admissible to explain its meaning. *DeVore v. Piedmont Ins. Co.*, 144 S.C. 417, 142 S.E. 593 (1928). Once the court determines the policy is ambiguous, then the question of the parties' intent is a factual issue. . . Here, however, the Court finds the matter to be appropriate for disposition on summary judgment, as the record contains uncontradicted deposition testimony by both parties to the contract (Ahold and Ace) that they did not intend for UIM coverage to be included in states such as South Carolina, where UIM coverage is not mandatory. Also, the company's normal UIM endorsement was not included as part of the policy. Therefore, I find that the policy, explained by uncontroverted extrinsic evidence, did not provide any amount of UIM coverage by its terms.

**2. Did Defendant make a meaningful offer to Ahold of $5,000,000 in UIM coverage?**

**A. Did the form used by the insurer in making the offer comply with S.C. Code Ann. § 38-77-350 so as to create a conclusive presumption that the insured made an "informed, knowing selection of coverage?"**

At the time the offer was made in 2004, the statute required the form to contain the following 5 elements:

(1) a brief and concise explanation of the coverage;

(2) a list of available limits and the range of premiums for the limits;

(3) a space for the insured to mark whether the insured chooses to accept or reject the coverage and a space for the insured to select the limits of coverage the insured desires;

(4) a space for the insured to sign the form that acknowledges that the insured has been offered the optional coverages;

(5) the mailing address and telephone number of the insurance department that the applicant may contact if the applicant has questions that the insurance agent is unable to answer.

The offer form used in this case is attached to Defendant's Second Motion for Summary Judgment as Exhibit G. The form used by ACE contains the same description of UIM coverage as the Department of Insurance (DOI) form. (*See* Exhibit H, SCDOI Form 2006). The question is whether the form was properly completed and executed. At the time this offer was made, the parties agree that the statute stated in 38-77-350(B) that "**if this form is properly completed and executed by the named insured** it is conclusively presumed that there was an informed, knowing selection of coverage..." (In 2006, the statute was amended to add a phrase after the part in bold print above, "after it has been completed by an insurance producer or a representative of the insurer.")

Plaintiff contends that the form fails to list the available limits up to the liability limits of $5,000,000. It lists limits of $15,000/$30,000/$10,000 but also has a column for "Your Policy's

6

Liability Coverage Limits" with blanks not completed. It also does not list the range of premiums for the various limits. Plaintiff additionally contends that the defendant has failed to prove that the insured rather than the insurer made the "X" mark on the form declining UIM coverage, citing *Floyd v. Nationwide*, 367 S.C. 253, 626 S.E.2d 6 (2005) (For purposes of the statutory presumption, the insured must personally mark and sign the offer form and an agent of the insurance company cannot do so.) Plaintiff asserts based on the deposition testimony that no one could say with certainty who actually made the "X" mark on the form. Defendant has provided an affidavit of Amanda Bennett, an employee of McGriff, the broker of the insured, who states that she marked the box "no" rejecting the coverage and then forwarded the form to Parillo of Ahold to sign. It appears that there is no evidence to controvert this affidavit and that an agent of the insured signed the form. The question then becomes, however, whether the failure of Parillo to sign the form, not only on the acknowledgement, but also on the line under the declination of coverage is fatal to the defendant's position. The form specifically states: "If your answer is "no", you must then sign here." The Court finds that the failure to sign beside the part of the form declining coverage means that the insurer cannot rely on the statutory presumption. *See also McDowell v. Travelers Property & Cas. Co.*, 357 S.C. 118, 590 S.E.2d 514 (Ct. App. 2003), holding that the statutory presumption does not apply where the insurer did not fill in the blanks listing the premium amounts.

**B. Did ACE make Ahold a meaningful offer under *State Farm Mut. Auto. Ins. Co. v. Wannamaker*, 291 S.C. 518, 354 S.E.2d 555 (1986)?**

Under *Wannamaker*, the company has made a meaningful offer where (1) the notification process is commercially reasonable; (2) the insurer specifies the limits of the optional coverage; (3) the insurer intelligibly advises the insured of the nature of the optional coverage; and (4) the insured is informed that UIM coverage is available for an additional premium.

7

In *Croft v. Old Republic Insurance Co.*, 365 S.C. 402, 618 S.E.2d 909 (2005), the S.C. Supreme Court held that the issuer of a fronting policy was still required to make a meaningful offer even though the insured has expressed a desire not to purchase such coverage. In *Croft*, the court explained:

> Evidence of an insured's knowledge or level of sophistication is not relevant when the analysis is confined to whether a particular written form complies with the statutory requirements, such that the insurer enjoys a presumption that it made a meaningful offer. That analysis simply involves a review of the written form itself.However, evidence of the insured's knowledge or level of sophistication is relevant and admissible when analyzing, under *Wannamaker*, whether an insurer intelligibly advised the insured of the nature of the optional UM or UIM coverage. It is a subjective inquiry to the extent the insured may offer evidence of his understanding, or lack thereof, of the nature of UM or UIM coverage. It also is an objective inquiry because the factfinder should consider the insured's knowledge and level of sophistication in determining whether the insurer intelligibly explained such coverage to the insured. *See McDowell v. Travelers Prop. & Cas. Co.*, 357 S.C. 118, 123-25, 590 S.E.2d 514, 516-17 (Ct.App.2003) (affirming grant of summary judgment to insurer on issue of whether a meaningful offer was made under *Wannamaker* when evidence revealed commercial insured's professional risk manager was experienced in dealing with vehicle insurance coverage, was fully aware of nature and purpose of UIM coverage, and knew and was able to apply the mathematical formula for calculating UIM premiums under the policy); *Anders v. S.C. Farm Bureau Mut. Ins. Co.*, 307 S.C. 371, 375-76, 415 S.E.2d 406, 408-09 (Ct.App.1992) (sophistication of insured ordinarily is an issue of fact which may be considered by jury in determining whether meaningful offer was made, and "[o]ne who is ignorant and unwary might require more explanation than a sophisticated applicant"). Whether the analysis is focused primarily on the written form, the *Wannamaker* analysis, or both, the purpose of requiring automobile insurers to make a meaningful offer of additional UM or UIM coverage "is for insureds to know their options and to make an informed decision as to which amount of coverage will best suit their needs." *Progressive Cas. Ins. Co.*, 362 S.C. at 352, 608 S.E.2d at 573.

In *Grinnell Corp. v. Wood*, 378 S.C. 458, 663 S.E.2d 61 (Ct. App. 2008), *cert. granted*, April 10, 2009, the South Carolina Court of Appeals held an insurer failed to make a meaningful offer despite the sophistication of a risk manager where the optional coverages printed on the form were for amounts

8

far less than the liability limit; the increased premium charges were left blank; the statement that single limits of additional coverage were selected was inconsistent with denial of additional coverage; and no signature appeared next to the rejection of additional coverage. *Grinnell* is factually distinguishable in that the form was filled out in such a way that it appeared the insured desired coverage. However, the Court has some concern with whether a meaningful offer was made under the *Wannamaker* factors.

**3. Assuming without deciding that the policy should be reformed to include some amount of underinsured coverage based on the lack of a meaningful offer, the next issue for decision is whether the plaintiff was an insured under the coverage.**

Defendant has attached to its motion as Exhibit J the affidavit of Virginia Boyles, the defendant's Commercial Automobile Product Manager. The affidavit indicates that Ace is required to file coverage forms and endorsements for the vehicles which it insures in South Carolina with the South Carolina Department of Insurance and that the Department of Insurance approved the company's UIM form, CA 21 88 08 01 on March 26, 2001. (*See also* affidavit of Lessia Lynch of the South Carolina Department of Insurance, Exhibit K.) The company's South Carolina Underinsured Motorists Coverage Endorsement defines the "Insured" in the case of a corporation as "anyone 'occupying' a covered 'auto'. . .'"[8] It defines "Occupying" as "in, upon, getting in, on, out or off."[9]

Plaintiff asserts that the statutory definition of "insured" contained in the South Carolina Code applies instead of the definition in the company's UIM endorsement. South Carolina Code Ann. § 38-77-30(7) defines "insured" as "the named insured and, while resident of the same household, the spouse of any named insured and relatives of either, while in a motor vehicle or otherwise, and any person who

---

[8] Docket Entry #72-11, p.2.

[9] Docket Entry #72-11, p. 3.

9

uses with the consent, expressed or implied, of the named insured the motor vehicle to which the policy applies and a guest in the motor vehicle to which the policy applies or the personal representative of any of the above." Plaintiff contends that he is a permissive user of the vehicle and would thus be considered to be an insured for purposes of underinsured coverage. Defendant contends that the statutory definition of "insured" does not apply because UIM is voluntary coverage and insurers are not subject to any statutory requirements regarding who is required to be included as an insured. *See Burgess v. Nationwide Mut. Ins. Co.*, 373 S.C. 37, 644 S.E.2d 40, 42 (2007) ("UIM coverage is entirely voluntary, and permits insureds, at their option, to purchase insurance coverage for situations where they are injured by an at-fault driver who does not carry sufficient liability insurance to cover the insureds' damages.") Moreover, Defendant contends that the company's UIM endorsement unambiguously provides that an insured must occupy the vehicle and the plaintiff had already gotten out of the vehicle, set up warning triangles, and walked around to check the triangles when he was hit.

Defendant cites *South Carolina Property and Casualty Guaranty Ass'n v. Yensen*, 345 S.C. 512, 548 S.E.2d 880 (Ct. App. 2001) in support of its argument that the plaintiff was not an insured. In *Yensen*, a police officer (Barnhill) and the driver of a vehicle which had broken down (Yensen) attempted to show that they were insureds under a Jefferson Pilot policy which provided UM and UIM coverage to a towing company. The driver of the tow truck had pulled in front of Yensen's vehicle in order to tow it, when another vehicle struck Yensen, Barnhill, and the tow truck driver. The Jefferson Pilot policy defined "insured" as "anyone else 'occupying' a covered auto." The policy defined "occupying" as "in, upon, getting in, on, out or off." The court held that Yensen and Barnhill did not occupy the tow truck merely because they expressed during litigation an intent to occupy the tow truck and that coverage did not exist for them under the policy.

The Court agrees with the defendant that, if the policy were reformed to include underinsured

10

coverage, the statutory definition of insured would not apply. UIM is voluntary coverage and insurers are not subject to any statutory requirements regarding who is required to be included as an insured. In addition, the policy should not be reformed in bits and pieces. Reformation of an insurance policy is an action in equity. *Kaiser v. Carolina Life Ins. Co.*, 219 S.C. 456, 65 S.E.2d 865, 871 (1951). Although the case law requires that UIM coverage be included in the policy if the carrier fails to make a meaningful offer of coverage, equity would still require that the terms and conditions of the UIM coverage inserted into the policy not be more expansive than what Ahold would have actually received had it selected and paid for UIM coverage. Plaintiff cannot be allowed to obtain a windfall of coverage that he would not have been entitled to if his employer Ahold had selected UIM coverage in South Carolina. Reformation is predicated on the equitable maxim that equity treats as done that which ought to be done. A party should not be placed in a better position than he would have been in otherwise. Therefore, the company's standard UIM endorsement which had been approved by the South Carolina Department of Insurance would apply.

As noted above, the company's standard UIM endorsement defines "Insured" in the case of a corporation as "anyone 'occupying' a covered 'auto'. . .'"[10] It defines "Occupying" as "in, upon, getting in, on, out or off."[11]

The words, "in" and "upon" refer to "situations where a person has some physical contact with the vehicle at the time of injury." *Yensen*, 174 S.E.2d at 883, *citing McAbee v. Nationwide Mut. Ins. Co.*, 249 S.C. 96, 152 S.E.2d 731 (1967). The phrase "alighting from" has been held to include "situations where the body has reached a point when there is no contact with the vehicle." *Whitmire*

---

[10] Docket Entry #72-11, p.2.

[11] Docket Entry #72-11, p. 3.

11

*v. Nationwide Mut. Ins. Co.*, 254 S.C. 184, 174 S.E.2d 391, 394 (1970) (Plaintiff who was struck after he left his car and was attempting to reach the shoulder was still "engaged in the completion of those acts reasonably to be expected from one getting out of an automobile under similar conditions." Therefore, he was an insured and "occupied" the car for purposes of uninsured motorist coverage.) In *Hite v. Hartford Acc. and Indemnity Co.*, 288 S.C. 616, 344 S.E.2d 173, cited by the plaintiff, a permissive user of an automobile (Hite) brought an action for uninsured motorist benefits. The parties stipulated that the plaintiff was not a named insured under the uninsured motorist law and the issue was whether the plaintiff was a person who was using the vehicle with the consent of the named insured such that he belonged in the second class of "insureds" under the statute.[12] The facts of the case were that Hite drove to the car dealership where he worked in a car which had been provided by the dealer for his use. "Leaving the car running, [Hite] got out of the car, approached the dealership on foot, and heard the night watchman yell to him that someone (Martin) had backed into a new truck. [Hite] walked fifty feet across the parking lot to tell Martin, who was sitting in a car not to leave. Martin then accelerated the vehicle, and [Hite's] legs were run over by the left rear tire." *Hite*, 344 S.E.2d at 175. The court found that there was no causal connection between the injuries sustained by Hite and the use of the vehicle. Hite's injury was "directly caused by Martin, and this was an independent or intervening cause wholly disassociated from, independent of, and remote from the use of the insured automobile. It cannot be said that being struck fifty feet from the insured automobile by another vehicle while answering a call for assistance of the night watchman is foreseeably identifiable with normal use, maintenance and ownership of the vehicle. It is difficult to see where use of the insured automobile was directly connected with or a cause of the ensuing accident." *Id*. at 177.

---

[12] In *Hite*, the court references S.C. Code Ann. § 56-9-810(2) for the definition of insured. That section has now been re-codified as Section 38-77-30(7).

12

Defendant also cites the court to the order of United States District Judge C. Weston Houck in *Melvin Hamilton v. Zurich American Insurance Co.*, Case #9:04-22124, August 30, 2005. In *Hamilton*, the plaintiff truck driver parked his truck beside the road and set out on foot to locate a church where he intended to park for a few hours. He walked across the street about 25 feet from the location of the truck to find the entrance to the church parking lot. As he was about to turn around to head back to the truck, he heard an approaching car from behind. He turned around and saw the headlights of a car and was then struck. Judge Houck ruled that, even construing the terms of the policy liberally in favor of the insured, the person must be in the vehicle or in the process of getting in or out of the vehicle to be considered occupying it and that the plaintiff was actually down the road from the vehicle when he was hit. Therefore, he found that the plaintiff was not an insured under the uninsured motorist coverage of the policy.

South Carolina case law makes clear that, in order to be "in, upon, getting in, on, out or off" the vehicle, a person must either be physically touching the vehicle or in the process of getting in or out, or at least still "engaged in the completion of those acts reasonably to be expected from one getting out of an automobile under similar conditions" as in *Whitmire*. The plaintiff in the case at bar was putting out warning triangles behind the truck when he was hit. He was found lying between the first triangle and the back of the truck, about five or ten feet from the back of the truck. (Hamer Dep. p. 24). Therefore, he was not occupying the vehicle by being "in, upon, getting in, on, out or off" the vehicle when he was hit.

### *Conclusion*

The Court has carefully examined the record in the case at bar and has determined that no genuine issue of material fact exists and judgment as a matter of law for the defendant is appropriate. For the foregoing reasons, the undersigned **GRANTS** the defendant's [72] motion for summary

judgment and denies the plaintiff's [71] motion for summary judgment.[13]

**AND IT IS SO ORDERED.**

s/ R. Bryan Harwell<br>
R. Bryan Harwell<br>
United States District Court Judge

March 16, 2010
Florence, South Carolina

---

[13] The Court also grants Docket Entry #89, Consent Motion for Leave to File a Supplemental Brief.